IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED


FLORIDA FARM BUREAU
GENERAL INSURANCE COMPANY,

      Appellant,

 v.

      Case No.  5D21-3196
      LT Case No. 2020-CC-0303

JOHN WORRELL AND
JOYCE WORRELL,

      Appellees.

_____/

Opinion filed April 28, 2023

Appeal from the County Court
for Marion County,
R. James McCune, Judge.

Hinda Klein, of Conroy Simberg,
Hollywood, for Appellant.

Mark A. Nation and Paul W.
Pritchard, of The Nation Law Firm,
Longwood, for Appellees.


SOUD, J.

Appellant Florida Farm Bureau General Insurance Company appeals final summary judgment entered against it and in favor of its insureds, John and Joyce Worrell, for the cost of remediation services to the Worrells' residence found to be covered by their homeowners insurance policy through Florida Farm Bureau. We have jurisdiction. *See* Art. V, § 4(b)(1), Fla. Const.; Fla. R. App. P. 9.030(b)(1)(A). We affirm.

I.

Laurance Anton, while intoxicated and apparently injured, wandered uninvited onto the Worrells' residential property. After Anton, an individual who did not reside at the Worrells' residence and was unrelated to them, broke into their shed, he left behind blood and what seemed to be feces. Anton was later found dead outside of a neighboring home. Anton was determined to have died accidentally from a blunt force injury to his head resulting from a fall.

Ultimately, the Worrells contracted with Accident Cleaners and Restoration to clean their shed. The cleaning company filed a claim for compensation with Florida Farm Bureau, which denied the claim. Florida Farm Bureau concluded coverage for the restoration expenses was excluded by the insurance policy's pollution exclusion provision.

2

The Worrells filed suit. The Worrells and Florida Farm Bureau filed competing motions for summary judgment. Following hearing, the Marion County Court entered judgment in favor of the Worrells in the amount of $4,103.85, together with pre-judgment and post-judgment interest, attorney's fees, and costs. This appeal followed.

## II.

Florida Farm Bureau argues the trial court erred in its summary judgment by ruling that the costs of remediation services incurred by the Worrells were covered by the policy. Specifically, Florida Farm Bureau argues the claim was excluded by the pollution exclusion of the policy. Florida Farm Bureau's argument fails.

## A.

The county court's summary judgment interpreting the homeowners insurance policy *sub judice* presents a question of law subject to de novo review. *See Wash. Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013) (citation omitted). Where the language of an insurance contract is plain and unambiguous, we must interpret the policy in accordance with its plain meaning so as to give effect to the policy as written. *Id.*

In determining the plainness or ambiguity of legal text, whether such text is found in statutes or contracts, Florida courts have recognized the

3

"supremacy-of-text principle," which means that "[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946–47 (Fla. 2020) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)). "[T]he plainness or ambiguity of [legal text] is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022) (citation omitted).[1] Florida courts also are guided by Justice Joseph Story's view that "every word employed in [a legal text] is to be expounded in its plain, obvious, and common sense, unless the context furnishes some ground to control, qualify, or enlarge it." *Advisory Op. to Governor re Implementation of Amend. 4, the Voting Restoration Amend.*, 288 So. 3d 1070, 1078 (Fla. 2020) (quoting Joseph Story, *Commentaries on the Constitution of the United States* 157–58 (1833)). Thus, the goal is to

---

[1] While many of the cases in Florida law interpreting legal texts involve interpretation of statutes, these principles of interpretation apply to this Court's work when interpreting contracts. *See Ruderman*, 117 So. 3d at 948 ("[C]ourts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." (quoting *U.S. Fire Ins. Co. v. J.S.U.B., Inc.,* 979 So. 2d 871, 877 (Fla. 2007))); *see also Sec. First Ins. Co. v. Vazquez*, 336 So. 3d 350, 352 (Fla. 5th DCA 2022) ("The guiding principal [sic] for insurance policy interpretation is that the policy must be read as a whole, affording words their plain meaning as bargained for by the parties.").

arrive at a "fair reading" of the contract and apply the text to the given facts before the Court. *See* Scalia & Garner, *Reading Law* at 33.

B.

The Florida Farm Bureau homeowners insurance policy provides in pertinent part:

> SECTION I – PERILS INSURED AGAINST
>
> Coverage A – Dwelling and Coverage B – Other Structures
>
> We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss: …
>
> 2. Caused by: …
>
> e. Any of the following: …
>
> (5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed[.]

This exclusion provision within the policy is plain and unambiguous.[2] Certain of the words—"pollutants" and "waste"—are specifically defined. The remaining material words are clear and have a commonly understood meaning. The words are clear both within the immediate context of the provision and the context of the policy more broadly.

Substantially identical language previously has been declared plain and unambiguous by the Florida Supreme Court. *See Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135 (Fla. 1998). While

---

[2] The Worrells argue blood is not excluded by the policy, based in part on the rule of construction known as *ejusdem generis*. This rule of construction provides that we construe an ambiguous general term in legal text by considering the specific things that follow and those things of the same kind, class or nature as the specific things identified. However, *ejusdem generis* is applicable only when contractual language is ambiguous and must be construed by the court. *See State v. Hobbs*, 974 So. 2d 1119, 1121 (Fla. 5th DCA 2008) ("*Ejusdem generis* should only come into play when it is necessary to construe an ambiguous statute, not to create an ambiguity in a clearly worded statute."); *see also Pottsburg Utils., Inc. v. Daugharty*, 309 So. 2d 199, 201 (Fla. 1st DCA 1975) ("[*Ejusdem generis*] is applicable, however, only where there is some inconsistency or ambiguity in the contract and the meaning of the general provision is doubtful and requires clarification."); *Grover Com. Enters., Inc. v. Aspen Ins. UK, Ltd.*, 202 So. 3d 877 (Fla. 3d DCA 2016). The same is true for the broader maxim *noscitur a sociis*, from which *ejusdem generis* arises. *See Russell Motor Car Co. v. United States*, 261 U.S. 514, 520 (1923) ("'Noscitur a sociis' is a well-established and useful rule of construction, where words are of obscure or doubtful meaning, and then, but only then, its aid may be sought to remove the obscurity or doubt by reference to the associated words."). There is no such ambiguity here.

*Deni* involved the accidental spillage of ammonia from a blueprint machine, this same language applied to the facts before us is equally unambiguous.

A fair reading of the exclusion provision leads us to conclude that the blood left at the Worrells' residence by Anton's unlawful entrance onto their property is not a "Pollutant" as defined by the policy's exclusion provision—that is, blood is not "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Indeed, blood is materially different from any of the substances listed to illustrate that which constitutes a "pollutant." Further, blood does not meet the definition of "waste," as blood plainly is not a material to be "recycled, reconditioned or reclaimed."

Since we have determined blood is not a pollutant that would be excluded from the policy's coverage—and that, as a result, the policy covers the restoration services secured by the Worrells—it is unnecessary to reach the same question as to the fecal matter. The fecal matter, at most, is a concurrent cause of loss to the Worrells. The policy does not contain any language limiting the concurrent cause doctrine's application to the pollution exclusion provision.[3] Thus, the concurrent cause doctrine provides for

---

[3] Such a limitation is often referred to as an "anti-concurring cause clause."

coverage of the entire loss. "The [concurrent cause doctrine] provides that coverage may exist where an insured risk constitutes a concurrent cause of the loss even when it is not the prime or efficient cause." *Sebo v. Am. Home Assurance Co.*, 208 So. 3d 694, 698 (Fla. 2016).

### III.

Accordingly, the trial court properly entered final summary judgment against Florida Farm Bureau and in favor of the Worrells.

AFFIRMED.

It is so ordered.

JAY, J., concurs.
LAMBERT, C.J., concurs in result only, without opinion.